## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| Michael Brown, Jr., Nathan Cole, Aaron Floyd, Brandon Horton, Eric Moore, Gregory Seal, John Wilterding, Manny Rivera, Richard Padilla, Dan Vischansky, Neal Nida, Kevin Shofner, Shaun Stockton, Kyran Adams, Cody Piper, John Gable, Donna Turbville, individually, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>J&W Grading, Inc., Migo IQ, Inc., Radar_Apps, Inc., ECO IQ LLC, Cloud IQ, LLC, Synergy LLC, Mojo Transport, LLC, Ronnie Guthrie, Jonathon Kotthoff, Carol Leese, Jason Neilitz; and DOES 1-100.<br><br>        Defendants. | Civil Action No. 18-1263<br><br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE AND CLASS ACTION COMPLAINT |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Michael Brown, Jr., Nathan Cole, Aaron Floyd, Brandon Horton, Eric Moore,

Gregory Seal, John Wilterding, Manny Rivera, Richard Padilla, Dan Vischansky, Neal Nida,

Kevin Shofner, Shaun Stockton, Kyran Adams, Cody Piper, John Gable, Donna Turbville,

individually on behalf of themselves, and all others similarly situated (collectively "Plaintiffs" or

"Representative Plaintiffs"), by and through the undersigned counsel, bring this action against

Defendants, J&W Grading, Inc., ECO IQ LLC, Migo IQ, Inc., Cloud IQ, LLC, Synergy LLC,

RADAR_Apps, Inc., Mojo Transport, LLC, Ronnie Guthrie, Jonathon Kotthoff, Carol Leese,

Jason Neilitz and DOES 1 to 100, inclusive (collectively "Defendants") seeking to recover for

violations of the minimum wage, overtime, meal and rest period, and recordkeeping sections of

the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and comparable sections of the

Puerto Rico Wage Payment Statute, 29 L.P.R.A. §§ 171 et seq., §§ 250 et seq. and §§ 271 et seq. A sub-class of plaintiffs also seek to recover under common law principles of breach of contract, unjust enrichment, and conversion.

## NATURE OF THE ACTION

1.     Plaintiffs allege on behalf of themselves, individually, and all other similarly situated employees of Defendants, who elect to opt in to this action under the collective action provision of 29 U.S.C. § 216(b) (the "Collective Action Members") that they are entitled to recover (i) unpaid minimum wages,  (ii) unpaid overtime wages for all hours worked exceeding 40 in a workweek, and (iii) statutory penalties, including liquidated damages, under the FLSA, 29 U.S.C. §§ 201 et seq., specifically 29 U.S.C. §§ 207, 216(b).

2.     Plaintiffs further complain, under Federal Rule of Civil Procedure 23, on behalf of themselves, individually, and all similarly situated employees of Defendants, who work or worked in Puerto Rico (the "Puerto Rico Class") that they are entitled to all unpaid wages and unpaid overtime, plus interest, liquidated damages, costs, and fees, and penalties as allowed for Defendants' violations of the Puerto Rico Wage Payment Statute, 29 L.P.R.A. §§ 171 et seq., §§ 250 et seq. and §§ 271 et seq.

3.     Plaintiffs further complain that Defendants breached contracts with each Plaintiff to provide per diem payments for housing and food. A subset of Plaintiffs complain the Defendants breached equipment leasing agreements by failing to make lease payments and refusing to return the leased property, among other breaches. Defendants were and are unjustly enriched by their appropriation and use of Plaintiffs' personal property.

4.     During the relevant time, Plaintiffs and all those similarly situated were employed by Defendants as non-exempt general laborers and were not paid minimum wage, were not paid for the hours worked, were regularly required to work more than 8 hours per day and/or 40 hours per week and were not compensated for overtime, and were not provided meal and rest periods.

5.      This action is brought as a collective action to recover unpaid wages, overtime compensation, liquidated damages, statutory penalties, and damages owed to Plaintiffs and all other similarly situated laborers employed by, or formerly employed by Defendants, subsidiaries, and affiliated companies under the FLSA.

6.      This action is also brought as a class action to recover unpaid wages, unpaid overtime compensation, liquidated damages, statutory penalties, and damages owed to Plaintiffs and all other similarly situated laborers employed by, or formerly employed by Defendants, subsidiaries, and affiliated companies under the laws of Puerto Rico.

7.      For at least three years before the filing of this action, Defendants had and continue to have a consistent policy and practice of failing to pay minimum wage and withholding wages from laborers, including Plaintiffs, in violation of federal and state laws. Defendants also had and continue to have a consistent policy and practice of requiring laborers, including Plaintiffs, to work more than 40 hours per week without paying them regular wages or proper overtime compensation as required by federal and state wage laws. Defendants further had and continue to have a consistent policy and practice of denying meal and rest periods as required by federal and state laws. Plaintiffs seek to recover unpaid wages and unpaid overtime compensation, including interest thereon, statutory penalties, reasonable attorney fees, and litigation costs on behalf of themselves and all similarly situated current and former laborers who worked for Defendants. Defendants' failure to pay regular wages, overtime wages, and other benefits to Plaintiffs and other employees, during or after their employment, was intentional and willful.

8.      Plaintiffs intend to ask the Court to authorize notice to all such persons informing them of the pendency of the action and their right to "opt in" to this lawsuit under 29 U.S.C. § 216(b), seeking wages, overtime compensation, and liquidated damages under federal law.

9.      Plaintiffs also intend to ask the Court to certify a class action, under Rule 23, for the purposes of asserting supplemental claims under state law.

**PARTIES**

10.     Plaintiff Michael Brown, Jr. is an adult residing in Greensboro, North Carolina, who was employed by Defendants within the meaning of the FLSA during the relevant three-year period. Plaintiff Brown worked for Defendants and did not receive wages, overtime compensation, or benefits for hours worked more than 8 hours per day and/or 40 hours per week, and was not permitted required rest and meal periods. Plaintiff Brown's consent-to-join form is attached as Exhibit A.

11.     Plaintiff Nathan Cole is an adult residing in Hampton, Virginia, who was employed by Defendants within the meaning of the FLSA during the relevant three-year period. Plaintiff Cole worked for Defendants and did not receive wages, overtime compensation, or benefits for hours worked more than 8 hours per day and/or 40 hours per week, and was not permitted required rest and meal periods. Plaintiff Cole's consent-to-join form is attached as Exhibit B.

12.     Plaintiff Aaron Floyd is an adult residing in Catano, Puerto Rico, who was employed by Defendants within the meaning of the FLSA during the relevant three-year period. Plaintiff Floyd worked for Defendants and did not receive wages, overtime compensation, or benefits for hours worked more than 8 hours per day and/or 40 hours per week, and was not permitted required rest and meal periods. Plaintiff Floyd's consent-to-join form is attached as Exhibit C.

13.     Plaintiff Brandon Horton is an adult residing in Bluffton, South Carolina, who was employed by Defendants within the meaning of the FLSA during the relevant three-year period. Plaintiff Horton worked for Defendants and did not receive wages, overtime compensation, or benefits for hours worked more than 8 hours per day and/or 40 hours per week, and was not permitted required rest and meal periods. Plaintiff Horton's consent-to-join form is attached as Exhibit D.

14.     Plaintiff Eric Moore is an adult residing in Kissimmee, Florida, who was employed by Defendants within the meaning of the FLSA during the relevant three-year period. Plaintiff

Moore worked for Defendants and did not receive wages, overtime compensation, or benefits for hours worked more than 8 hours per day and/or 40 hours per week, and was not permitted required rest and meal periods. Plaintiff Moore's consent-to-join form is attached as Exhibit E.

15.     Plaintiff Gregory Seal is an adult residing in Franklinton, Louisiana, who was employed by Defendants within the meaning of the FLSA during the relevant three-year period. Plaintiff Seal worked for Defendants and did not receive wages, overtime compensation, or benefits for hours worked more than 8 hours per day and/or 40 hours per week, and was not permitted required rest and meal periods. Plaintiff Seal's consent-to-join form is attached as Exhibit F.

16.     Plaintiff John Wilterding is an adult residing in Palmer, Alaska, who was employed by Defendants within the meaning of the FLSA during the relevant three-year period. Plaintiff Wilterding worked for Defendants and did not receive wages, overtime compensation, or benefits for hours worked more than 8 hours per day and/or 40 hours per week, and was not permitted required rest and meal periods. Plaintiff Wilterding's consent-to-join form is attached as Exhibit G.

17.     Plaintiff Manny Rivera is an adult residing in Carolina, Puerto Rico, who was employed by Defendants within the meaning of the FLSA during the relevant three-year period. Plaintiff Rivera worked for Defendants and did not receive wages, overtime compensation, or benefits for hours worked more than 8 hours per day and/or 40 hours per week, and was not permitted required rest and meal periods. Plaintiff Rivera's consent-to-join form is attached as Exhibit H.

18.     Plaintiff Richard Padilla is an adult residing in Gibsonton, Florida, who was employed by Defendants within the meaning of the FLSA during the relevant three-year period. Plaintiff Padilla worked for Defendants and did not receive wages, overtime compensation, or benefits for hours worked more than 8 hours per day and/or 40 hours per week, and was not permitted required rest and meal periods. Plaintiff Padilla's consent-to-join form is attached as Exhibit I.

19.     Plaintiff Dan Vischansky is an adult residing in Fairbanks, Alaska, who was employed by Defendants within the meaning of the FLSA during the relevant three-year period. Plaintiff Vischansky worked for Defendants and did not receive wages, overtime compensation, or

benefits for hours worked more than 8 hours per day and/or 40 hours per week, and was not permitted required rest and meal periods. Plaintiff Vischansky's consent-to-join form is attached as Exhibit J.

20.     Plaintiff Neal Nida was employed by Defendants within the meaning of the FLSA during the relevant three-year period. Plaintiff Nida worked for Defendants and did not receive wages, overtime compensation, or benefits for hours worked more than 8 hours per day and/or 40 hours per week, and was not permitted required rest and meal periods. Plaintiff Nida's consent-to-join form is attached as Exhibit K.

21.     Plaintiff Kevin Shofner is an adult residing in Black Duck, Minnesota, who was employed by Defendants within the meaning of the FLSA during the relevant three-year period. Plaintiff Shofner worked for Defendants and did not receive wages, overtime compensation, or benefits for hours worked more than 8 hours per day and/or 40 hours per week, and was not permitted required rest and meal periods. Plaintiff Shofner's consent-to-join form is attached as Exhibit L.

22.     Plaintiff Shaun Stockton is an adult residing in Martinsville, Virginia, who was employed by Defendants within the meaning of the FLSA during the relevant three-year period. Plaintiff Stockton worked for Defendants and did not receive wages, overtime compensation, or benefits for hours worked more than 8 hours per day and/or 40 hours per week, and was not permitted required rest and meal periods. Plaintiff Stockton's consent-to-join form is attached as Exhibit M.

23.     Plaintiff Kyran Adams is an adult residing in Colonial Heights, Virginia, who was employed by Defendants within the meaning of the FLSA during the relevant three-year period. Plaintiff Seal worked for Defendants and did not receive wages, overtime compensation, or benefits for hours worked more than 8 hours per day and/or 40 hours per week, and was not permitted required rest and meal periods. Plaintiff Adams's consent-to-join form is attached as Exhibit N.

24.     Plaintiff Cody Piper in an adult residing in Newport News, Virginia, who was employed

6

by Defendants within the meaning of the FLSA during the relevant three-year period. Plaintiff Seal worked for Defendants and did not receive wages, overtime compensation, or benefits for hours worked more than 8 hours per day and/or 40 hours per week, and was not permitted required rest and meal periods. Plaintiff Piper's consent-to-join form is attached as Exhibit O.

25.     Plaintiff John Gable is an adult residing in Dayton, Texas, who was employed by Defendants within the meaning of the FLSA during the relevant three-year period. Plaintiff Seal worked for Defendants and did not receive wages, overtime compensation, or benefits for hours worked more than 8 hours per day and/or 40 hours per week, and was not permitted required rest and meal periods. Plaintiff Gable's consent-to-join form is attached as Exhibit P.

26.     Plaintiff Donna Turbville is an adult residing in Meridian, Mississippi who was employed by Defendants within the meaning of the FLSA during the relevant three-year period. Plaintiff Seal worked for Defendants and did not receive wages, overtime compensation, or benefits for hours worked more than 8 hours per day and/or 40 hours per week, and was not permitted required rest and meal periods. Plaintiff Turbville's consent-to-join form is attached as Exhibit Q.

27.     At all relevant times, Defendant J&W Grading, Inc. was incorporated in the State of Virginia, and has its principal place of business in Virginia.

28.      At all relevant times, Defendant ECO IQ LLC was a limited liability company organized under the laws of the Commonwealth of Puerto Rico and has its principal place of business in Puerto Rico.

29.     At all relevant times, Defendant MIGO IQ, Inc. was incorporated under the laws of the Commonwealth of Puerto Rico and has its principal place of business in Puerto Rico.

30.     At all relevant times, Defendant Cloud IQ, LLC was a limited liability company organized under the laws of the laws of the State of Wisconsin and has its principal place of business in Puerto Rico.

31.      At all relevant times, Defendant Synergy, LLC was a limited liability company organized under the laws of the Commonwealth of Puerto Rico and has its principal place of

business in Puerto Rico.

32.     At all relevant times, Defendant RADAR_Apps, Inc., dba Migo IQ, was incorporated under the laws of the Commonwealth of Puerto Rico and has its principal place of business in Puerto Rico.

33.      At all relevant times, Defendant Mojo Transport, LLC was a limited liability company organized under the laws of the laws of the State of Wisconsin and has its principal place of business in Puerto Rico.

34.     Plaintiffs are informed and believe that Defendant Ronnie Guthrie is the owner of Defendant J&W Grading, Inc.

35.     On information and belief, Defendant Guthrie is involved in the day-to-day business operations of Defendant J&W Grading, Inc., and has authority to hire and fire employees, the authority to direct and supervise the work of employees, including Plaintiffs in this case, and the authority to make decisions regarding wage and hour classifications, including the decisions to as to employee compensation and capital expenditures. At all relevant times, this individual acted and had responsibility to act on behalf and in the interests of one or more of the Defendants in devising, directing, implementing and supervising the wage and hour practices and policies relating to employees, including the decision to not pay Plaintiffs for time and an overtime premium as required by the FLSA. As such, at all times hereinafter mentioned, Defendant Guthrie has been and is an "employer" as defined by the FLSA, 29 U.S.C § 203(d), and Puerto Rico Code 29 L.P.R.A. § 271 et seq.

36.     Plaintiffs are informed and believe that Defendants Jonathon Kotthoff and Carol Leese are the owners of all Defendants except J&W Grading, Inc. Plaintiffs are informed and believe that Defendant Jason Neilitz is the owner of Defendants Cloud IQ, Inc. and Mojo Transport, LLC.

37.     On information and belief, Defendants Kotthoff, Leese, and Neilitz are involved in the day-to-day business operations of Defendants Migo IQ, Inc., Cloud IQ, Inc., RADAR_Apps, Inc., Synergy, LLC, ECO IQ, Inc., and Mojo Transport, LLC, and have authority to hire and fire

employees, the authority to direct and supervise the work of employees, including Plaintiffs in this case, and the authority to make decisions regarding wage and hour classifications, including the decisions as to employee compensation and capital expenditures. At all relevant times, these individuals acted and had responsibility to act on behalf and in the interests of one or more of Defendants in devising, directing, implementing, and supervising the wage-and-hour practices and policies relating to employees, including the decision to not pay Plaintiffs for time and an overtime premium as required by the FLSA. At all relevant times, Defendants Kotthoff, Leese, and Neilitz have been and are "employers" as defined by the FLSA, 29 U.S.C § 203(d), and Puerto Rico Code 29 L.P.R.A. § 271 et seq.

38.     DOES 1 to 100, inclusive, are now, and/or at all times mentioned in this Complaint were, licensed to do business and/or actually doing business in the Commonwealth of Puerto Rico. Plaintiffs do not know the true names or capacities, whether individual, partner, or corporate, of DOES 1 to 100, inclusive, and for that reason, DOES 1 to 100 are sued under such fictitious names. Plaintiffs will seek leave of court to amend this Complaint to allege their names and capacities as soon as they are ascertained.

39.     Plaintiffs are informed and believe that Defendants, and each of them, are now and/or at all times mentioned in this Complaint were in some manner legally responsible for the events, happenings, and circumstances alleged in this Complaint.

40.     Plaintiffs are further informed and believe that at all relevant times all Defendants, and each of them, were and are the agents, servants, employees, joint venturers, alter egos, and/or partners of each of the other Defendants, and were, at all such times, acting within the course and scope of their employment and/or agency; and that each and every Defendant, while acting as a high corporate officer, director, and/or managing agent, principal and/or employer, expressly directed, consented to, approved, affirmed, and ratified each and every action taken by the other co-Defendants, as herein alleged, and was responsible in whole or in part for the matters referred to herein.

41.     Plaintiffs are further informed and believe that at all relevant times Defendants, and each

of them, proximately caused Plaintiffs, and all others similarly situated and the general public, to be subjected to the unlawful practices, wrongs, complaints, injuries, and/or damages alleged in this Complaint.

42.     Plaintiffs are further informed and believe that Defendants, and each of them, are now and/or at all relevant times were members of and/or engaged in a joint venture, partnership, and common enterprise, and were acting within the course and scope of, and in pursuit of that joint venture, partnership, and common enterprise and, as such, were co-employers of Plaintiffs and the putative class herein.

43.     Plaintiffs are further informed and believe that Defendants, and each of them, at all relevant times concurred with, contributed to, approved of, aided and abetted, condoned, and/or otherwise ratified the various acts and omissions of each and every one of the other Defendants in proximately causing the injuries and/or damages alleged in this Complaint.

## JURISDICTION AND VENUE

44.     This Court has subject-matter jurisdiction over this action under 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction." This Court has federal-question jurisdiction over this action under 28 U.S.C. § 1331.This Court has supplemental jurisdiction over Plaintiffs' state claims under 28 U.S.C. § 1367 because such claims derive from a common nucleus of operative facts.

45.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because the Defendants conduct business within this judicial district. In addition, a substantial part of the events and omissions giving rise to the claims pleaded in this Complaint occurred within this judicial district.

46.     This Court has personal jurisdiction over Defendants as a result of the following during the relevant time period:

a.   Defendants have continuously, regularly, permanently, purposively, and

systematically engaged in a course of business, and have otherwise been present, within Puerto Rico (availing themselves of the legal privileges of doing business within Puerto Rico) by maintaining, possessing, and operating a business within Puerto Rico and entering into contracts with individuals, including Plaintiffs, within Puerto Rico to provide employment services at their businesses.

b.  The statutory violations involving Plaintiffs arose directly from, and are substantially related to, Defendants' transacting of business and contracting within Puerto Rico: namely, contracting with, employing, and otherwise doing business with Plaintiffs.

c.  Defendants committed the statutory violations that caused Plaintiffs to suffer lost wages and other harm, and Defendants reasonably should have expected them to suffer such harm, within Puerto Rico; Defendants have regularly done and solicited business within Puerto Rico and derived substantial revenue from services rendered within Puerto Rico.

## COVERAGE ALLEGATIONS

47.  At all times hereinafter mentioned, Defendants have been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

48.  At all times hereinafter mentioned, Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA 29 U.S.C. § 203(r).

49.  At all times hereinafter mentioned, Defendants, individually and collectively, have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1)(A), in that the enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that the enterprise has had and has an annual gross

volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

50.     At all times hereinafter mentioned, Plaintiffs have been employees within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

51.     At all times hereinafter mentioned, Plaintiffs were individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

52.     At all times hereinafter mentioned, Defendants have been an employer within the meaning of 29 L.P.R.A. § 250b.

53.     At all times hereinafter mentioned, Plaintiffs were employees within the meaning of 29 L.P.R.A. § 250b.

## GENERAL ALLEGATIONS

54.     On September 20, 2017, Puerto Rico suffered a horrific hurricane leaving much of the island in need of repairs and cleanup.

55.     On information and belief, Defendants Eco, Cloud IQ, Migo IQ, RADAR_Apps, and/or Synergy obtained a multi-million-dollar FEMA contract from the U.S. Government to assist with the clean-up efforts.

56.     On information and belief, Defendants Eco, Cloud IQ, Migo IQ, RADAR_Apps, and Synergy ("Technology Firm Defendants") are start-up technology firms with no prior experience in debris removal or any of the other tasks needed to fulfill the FEMA contract.

57.     On information and belief, the Technology Firm Defendants sought out the FEMA contract in order to develop and test a smartphone App to eventually sell to the government and other contractors to use during storm clean up.

58.     On information and belief, Technology Firm Defendants were not so much interested in

helping the people of Puerto Rico recover from Hurricane Maria as they were trying to put themselves in a position to make millions or billions of dollars creating an App. The clean-up of Hurricane Maria was nothing more than a beta test of their product.

59.     On information and belief, Cloud IQ, LLC thereafter subcontracted the Puerto Rico clean-up work to Defendant J&W Grading, Inc. because the Technology Firm Defendants had no staff, no equipment and no experience or expertise to fulfill the contract they were awarded.

60.     On information and belief, J&W Grading is a small "mom and pop" contractor in Virginia which also did not have the staff, equipment or experience to fulfill the FEMA contract.

61.     J&W Grading thereafter hired Plaintiffs—men and women from around the United States—to go to Puerto Rico to work on debris removal and clean-up efforts under the FEMA contract awarded to Defendants. The scope of the work included: cutting, pushing, separating, consolidating, and/or stacking all road and curbside debris into like kind of vegetation or C & D piles as directed and then loading and hauling into an assigned DMS site, as well as cutting, loading, and hauling all approved leaners, hangers, and stumps into an assigned DMS site.

62.     Plaintiffs initially entered into Subcontractor Agreements with Cloud IQ, through J&W Grading, which provided the rates to be paid for each type of project. The Subcontractor Agreement identifies J&W Grading as the "Contractor." The Subcontractor Agreement also refers to an unidentified "prime contractor" and "project owner."

63.     Under the Subcontractor Agreements, Plaintiffs were promised daily wage rates (as opposed to hourly) and a $50 per day per diem for living expenses for seven (7) days a week. The Subcontractor Agreement promised payment for the first invoice in 21 days and payments within 14 days thereafter.

64.     On information and belief, the Technology Firm Defendants required J&W Grading to lease equipment because it had no means to perform the clean-up. J&W Grading thereafter entered into lease agreements with Plaintiffs to lease their personal equipment, including tools, trailers and vehicles. ("Equipment Rental Agreement"). J&W Grading shipped the equipment to Puerto Rico and, on information and belief, the Technology Firm Defendants paid for the

shipping costs.

65.     Although some Plaintiffs began working in Louisiana and Florida loading equipment on barges to send to Puerto Rico, the majority of all the work occurred in Puerto Rico. On information and belief, after the subcontractors, including Plaintiffs, arrived in Puerto Rico, the Technology Firm Defendants instructed J&W Grading to hire all subcontractors, including Plaintiffs, as employees of J&W Grading.

66.     Plaintiffs who worked to help load equipment on to barges in Louisiana and Florida for shipment to Puerto Rico were worked 100% off the clock as no one ever received any wages for this work.

67.     Once arriving in Puerto Rico, all Plaintiffs were required to be hired as employees of J&W Grading as required by the Technology Firm Defendants as opposed to operating under the Subcontractor Agreements and all were required to sign documents new hire documents including certain Employment Agreements.

68.     The Employment Agreement Package includes a "Non-disclosure and Non-Circumvent Agreement." This Non-Disclosure Agreement is between the employees and Migo, Inc., Mojo Transport LLC and Cloud IQ.  The Non-compete Agreement provides that the parties to the agreement may have confidential and proprietary information regarding a "potential strategic partnership" identified as the "Deal." On information and belief, the Non-Disclosure Agreement relates to the App which the Technology Firm Defendants were beta testing through the FEMA contract.

69.     Plaintiffs were unable to start work for several weeks while Defendants waited for equipment to arrive, and then labeled every piece of leased equipment with its own logo and branding, affixing signage to Plaintiffs' personal property. On information and belief, the Technology Firm Defendants put their signage on all Plaintiffs' property as a form of pre-launch free advertising and marketing of the App they were beta testing through the FEMA contract.

70.     The Technology Firm Defendants also put GPS and load tracking devices in Plaintiffs' vehicles as part of the R&D for their App. On information and belief, the predominant, if not

sole, purpose of the entire clean-up operation was for the Technology Firm Defendants to research, develop and market their App.

71.     Defendants own documents promised Plaintiffs a daily per diem of $50 per day, seven (7) days a week, flat daily rates expected to cover ten (10) hours of work each day, and $100 per day per employee in the event of a work stoppage, excepting only Saturday and Sunday.

72.     While Plaintiffs waited for the Technology Firm Defendants to place the free advertising all over their personal property, Plaintiffs were not paid any wages. Instead, per diem amounts were purportedly advanced by payment for Plaintiffs' hotel rooms and meals. After three weeks, plaintiffs began working for Defendants—cutting down trees, hauling debris, etc.

73.     During most weeks, Plaintiffs were required to work more than 8 hours per day and more than 40 hours per week. Plaintiffs often worked several consecutive days that exceeded 8 hours. Plaintiffs were required to work off the clock and were not completely relieved of their duties.

74.     Plaintiffs were also required to work through the statutory meal period. They were not provided a meal period after the third and before the fifth consecutive hour of work and were not paid for missed meal periods at double the rate.

75.     When the first paycheck was due from J&W Grading and the Technology Firm Defendants, Plaintiffs were told that such payments were forthcoming, but that Defendants were having an issue with payroll processing. After being in Puerto Rico for approximately six weeks, Plaintiffs received one week of purported "wages." Those wages did not include overtime, etc. and were far short from amounts owed.

76.     Thereafter Plaintiffs received one additional pay stub, but the wages earned as referenced on the stub were never deposited into Plaintiffs' checking accounts or ever received in any way.

77.     Plaintiffs continued working until the end of March of 2018, when they were advised that J&W Grading had been fired by the Technology Firm Defendants.

78.     When Plaintiffs demanded payment from the Technology Firm Defendants, they were threatened with termination and/or actually terminated, and banned from working further on the clean-up project. Plaintiffs also demanded to see the FEMA contract and to complain to the

government about the failure to pay wages, but the Technology Firm Defendants would not allow them to see the FEMA contract.

79.     In addition to failing to pay wages, Defendants made no lease payments to Plaintiffs under the Equipment Rental Agreement. Plaintiffs have sought return of their personal property, but Defendants have failed and refused to return Plaintiffs' property.

80.     The Technology Firm Defendants offered to "rehire" some Plaintiffs, but only on the condition that they sign a release waiving their right to all back wages and lease payments owed.

81.     Plaintiffs who refused to sign the waiver of back wages were promptly kicked out of their housing situation without notice and left them stranded in Puerto Rico without any means of supporting themselves. Many Plaintiffs remain stranded in Puerto Rico with no money and no way home.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

**A.     FLSA Collective Action**

82.     Plaintiffs incorporate the above paragraphs of this Complaint as if fully alleged herein. Plaintiffs bring their First Cause of Action as a nationwide "opt-in" collective action under 29 U.S.C. § 216(b), on behalf of themselves and on behalf of the following class of persons ("FLSA Class"):

83.     **FLSA Class**: All persons employed and classified as non-exempt laborers for Defendants, and each of them, during any part of the period beginning three years before the filing of the initial complaint in this action and who elect to opt in to this action under the FLSA, 29 U.S.C. § 216(b) ("FLSA Class").

84.     The FLSA claim may be pursued by those who opt in to this case, under 29 U.S.C. § 216(b).

85.     Plaintiffs, individually and on behalf of other similarly situated employees, seek relief on a collective basis challenging, among other FLSA violations, Defendants' practice of failing to accurately record all hours worked, failing to pay minimum wage, or any wages at all, failing to

pay employees for all overtime hours worked, failing to properly calculate and pay overtime compensation that was recorded, and failing to provide meal and rest breaks. The number and identity of other plaintiffs yet to opt in and consent to be party plaintiffs may be determined from Defendants' records, and potential class members may easily and quickly be notified of the pendency of this action.

**B.      Collective Action Allegations**

86.      Other employees have been victimized by this pattern, practice, and policy, which are willful violations of the FLSA. Some of these employees have worked with Plaintiffs and have reported that they were paid in the same manner and were not properly compensated for all hours worked as required by the FLSA. Thus, from their observations and discussions with these employees, Plaintiffs are aware that the illegal practices or policies of Defendants have been imposed on the Putative Class Members.

87.      The **Putative Class Members** are all salaried employees who were denied minimum wage, denied wages entirely, denied meal and rest periods, and who regularly work(ed) more than 40 hours per week but were not paid overtime. These employees are victims of Defendants' unlawful compensation practices and are similarly situated to Plaintiffs in terms of job duties, pay provisions, and employment practices.

88.      Defendants' failure to pay wages and overtime compensation at the rates required by the FLSA results from generally applicable, systematic policy and practice and is not dependent on the personal circumstances of the Putative Class Members. Thus, Plaintiffs' experiences are typical of the experiences of the Putative Class Members.

89.      The specific job titles or precise job requirements of the various Putative Class Members does not prevent collective treatment. All Putative Class Members, regardless of their precise job requirements or rates of pay, are entitled to be properly compensated for all hours worked more than 40 hours per week. Although the issue of damages may be individual in character, this does not detract from the common nucleus of liability facts.

**C.      Puerto Rico Opt-Out Class Action**

90.      Plaintiffs bring the Second Cause of Action in this action on behalf of the Puerto Rico Opt-Out Class described below.

91.      **Puerto Rico Opt-Out Class**: All persons who were employed as general laborers by Defendants in Puerto Rico, during any part of the period beginning three years before the filing of the initial complaint in this action to and through the date a judgment is rendered.

92.      The Puerto-Rico-law claims, if certified for class-wide treatment, may be pursued by all similarly situated persons who do not opt out of the Puerto Rico Opt-Out Class. The federal and state laws on which Plaintiffs base their claims are broadly remedial in nature. These laws and labor standards serve an important public interest in establishing minimum working conditions and standards. These laws and labor standards protect the average working employee from exploitation by employers who may seek to take advantage of superior economic and bargaining power in setting onerous terms and conditions on employment.

**D.      Class Allegations**

93.       **Numerosity**: The members of the Class are so numerous that joinder of all members is impracticable. The exact number of the members of the Class can be determined by reviewing Defendants' records. Plaintiffs are informed and believe that there are over 80 individuals in each class defined above.

94.      **Commonality:** There is a well-defined community of interest in the questions of law and fact affecting the Class as a whole. The questions of law and fact common to the Class predominate over any questions solely affecting individual members of the action. Among the common questions of law and fact are:

     a.   Whether Defendants' employees were paid minimum wage; denied wages, were and are entitled to be paid overtime compensation as a result of working more than 8 hours per day and/or 40 hours in a week; and were denied meal and rest breaks;

     b.   The manner in which Plaintiffs and members of the Class were compensated;

     c.   Whether Defendants failed to keep, maintain, and/or furnish accurate wage statements

for the Class.

95.    **Typicality**: Plaintiffs' claims are typical of the other class members. Plaintiffs, like the other members of the above classes, were, and are, employed as laborers and are, and were, subjected to Defendants' payment policies, practices, and procedures. Likewise, Plaintiffs' job duties were, and are, typical of those of other class members who worked and work in similar positions.

96.    **Adequacy**: Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel experienced and competent in class action and employment litigation. Plaintiffs have no interests that are contrary to, or in conflict with, members of the Class.

97.    This case is brought and may be maintained as a class action. Questions of law or fact common to class members predominate over any questions solely affecting individual class members and a class action is superior to other available methods for fairly and efficiently adjudicating this controversy. Class-action treatment will allow similarly situated class members to simultaneously and efficiently prosecute their common claims in a single forum without the needless duplication of effort and expense that numerous individual actions would entail.

98.    Because the monetary amounts owed to many individual class members may be relatively small, the burden and expense of individual litigation would make it difficult, if not impossible, for individual class members to seek and obtain relief. A class action will also serve the important public interest of permitting class members harmed by Defendants' unlawful practices to effectively pursue recovery of the sums owed to them.

99.    Plaintiffs are not aware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

100.   A collective/class action suit, such as this one, is superior to other available means for fair and efficient adjudication of this lawsuit. The damages suffered by individual members of the Class may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Class to individually seek redress for the wrongs done to them.

## COUNT I
## Violation of FLSA, Minimum Wages Collective Action

101.    Plaintiffs, on behalf of themselves, individually, and all others similarly situated, reassert the allegations set forth in the above paragraphs.

102.    Count I arises from Defendants' violation of the FLSA, for its failure to pay all minimum wages earned by Plaintiffs and other similarly situated employees.

103.    Defendants, and each of them, violated the FLSA by paying Plaintiffs and other similarly situated employees daily "flat rates" or "per load" rates that, when calculated based upon actual hours worked, resulted in pay well below the required minimum wage.

104.    In most instances, Defendants failed to pay Plaintiffs any wages whatsoever. Defendants distributed "pay stubs" but no money was deposited in Plaintiffs' bank accounts or otherwise provided to them.

105.    Defendants knew or acted in reckless disregard that its compensation practices violated the FLSA.

106.    Defendants' violation of the FLSA was willful.


## COUNT II
## Violation of FLSA, Overtime Collective Action

107.    Plaintiffs, on behalf of themselves, individually, and all others similarly situated, reassert the allegations set forth in the above paragraphs.

108.    Count II arises from Defendants' violation of the FLSA, for its failure to pay all overtime wages earned by Plaintiffs and other similarly situated employees.

109.    Defendants, and each of them, violated the FLSA by failing to pay Plaintiffs and other similarly situated employees one and one-half times their lawfully calculated regular rate of pay for all hours worked in excess of 40 in one or more individual workweeks.

110.    Defendants violated the FLSA by failing to keep, make, and preserve accurate records of all time worked by Plaintiffs and similarly situated employees.

111.    Defendants knew or acted in reckless disregard that its compensation practices violated the FLSA.

112.    Defendants' violation of the FLSA was willful.

**COUNT III**
**Violation of FLSA, Recordkeeping Collective Action**

113.    Plaintiffs, on behalf of themselves, individually, and all others similarly situated, reassert the allegations set forth in the above paragraphs.

114.    Defendants, and each of them, have willfully and repeatedly violated the provisions of sections 11(c) and 15(a)(5) of the Act, in that defendants failed to keep, and preserve, adequate and accurate records as prescribed by the regulations issued and found at 29 C.F.R. Part 516.

115.    At all relevant times, defendants failed to make, keep, and preserve adequate and accurate records of hours worked and wages paid because defendants did not keep records of aggregated hours worked by employees for multiple defendant entities in a single pay period.

**COUNT IV**
**Violation of FLSA, Retaliation Collective Action**

116.    Plaintiffs, on behalf of themselves, individually, and all others similarly situated, reassert the allegations set forth in the above paragraphs.

117.    Plaintiffs engaged in protected activity under the FLSA by asserting claims for violation of the FLSA's minimum wage and overtime provisions.

118.    The Technology Firm Defendants refused to rehire Plaintiffs unless they signed a written agreement waiving their rights to back wages. The Technology Firm Defendants also evicted Plaintiffs from their housing situation without notice for refusing to waive their right to back wages. The Technology Firm Defendants' refusal to rehire Plaintiffs and eviction of Plaintiffs

was in retaliation for asserting violations of the FLSA and demanding wages owed.

119.    The refusal to hire Plaintiffs and the eviction of Plaintiffs closely followed in time their protected activity.

120.    The Technology Firm Defendants' refusal to hire Plaintiffs and eviction of Plaintiffs was a retaliatory act directly and causally related to Plaintiffs' demand for back wages and the Technology Firm Defendants' learning that Plaintiffs planned to file a lawsuit.

121.    The Technology Firm Defendants' refusal to hire Plaintiffs and eviction of Plaintiffs was a retaliatory act that resulted in an adverse effect on the terms, benefits, and conditions of their potential employment.

122.    The Technology Firm Defendants violated Plaintiffs' rights under the FLSA, 29 U.S.C. § 215(a)(3), by retaliating against them for filing a lawsuit alleging violations of the FLSA.

123.    Plaintiffs have suffered damages because of the Technology Firm Defendants' unlawful conduct.

**COUNT V**
**Violation of Puerto Rico State Statute –**
**Time and Manner of Payment Violations**

124.    Plaintiffs, on behalf of themselves, individually, and all others similarly situated, reassert the allegations set forth in the above paragraphs.

125.    Puerto Rico Code 29 L.P.R.A. § 173, et seq. requires employers to pay their employees for all hours worked at intervals not to exceed fifteen (15) days. This section further provides that when an employee is dismissed from it work, the employer has a duty to pay the employee no later than the next official payday.

126.    Puerto Rico Code further provides that employers who violate the provisions of this act are liable to affected employees for unpaid wages, liquidated damages of an amount equal to the amount owed, costs, attorney fees, and other appropriate relief. Puerto Rico Code 29 L.P.R.A. § 177.

127.    Defendants, and each of them, violated Puerto Rico Code § 173by regularly and

repeatedly failing to properly compensate Plaintiffs for all their compensable time and failing to do so in the time required by law.

128.     Defendants willfully failed to pay Plaintiffs for time worked.

129.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered and will continue to suffer lost wages, and other damages, all more than the jurisdictional minimum.

**COUNT VI**
**Violation of Puerto Rico State Statute -- Minimum Wage Violations**

130.     Plaintiffs, on behalf of themselves, individually, and all others similarly situated, reassert the allegations set forth in the above paragraphs.

131.     Count VI arises from Defendants' violation of the 29 L.P.R.A. § 250, for their failure to pay all minimum wages earned by Plaintiffs and other similarly situated employees.

132.     Defendants, and each of them, violated the Section 250 by paying Plaintiffs and other similarly situated employees daily "flat rates" or "per load" rates that, when calculated based upon actual hours worked, resulted in pay well below the required minimum wage.

133.     In most instances, Defendants failed to pay Plaintiffs any wages whatsoever. Defendants distributed "pay stubs" but no money was deposited in Plaintiffs' bank accounts or otherwise provided to them.

134.     Defendants knew or acted in reckless disregard that its compensation practices violated the Puerto Rico State law. Defendants' violation of the FLSA was willful.

**COUNT VII**
**Violation of the Puerto Rico Constitution and Statute—**
**Unpaid Overtime**

135.     Plaintiffs, on behalf of themselves, individually, and all others similarly situated, reassert the allegations set forth in the above paragraphs.

136.     Count VII arises from Defendants' violation of 29 L.P.R.A. § 273, for their failure to pay overtime wages earned by Plaintiffs and other similarly situated employees.

137.    Article II, Section 16 of the Puerto Rico Constitution provides that no worker shall work more than eight hours per day, and 29 L.P.R.A. § 273(a) defines overtime as "the hours that an employee works for an employer more than eight (8) hours during any period of twenty-four consecutive hours."

138.    Defendants, and each of them, violated Article II, Section 16 of the Puerto Rico Constitution and 29 L.P.R.A. § 273(a), by regularly and repeatedly failing to properly compensate Plaintiffs for all their compensable overtime actually worked and failing to do so in the time required by the Constitution and 29 L.P.R.A. § 273 (a). "The right of every employee to choose his occupation freely and to resign therefrom is recognized, as is his right to equal pay for equal work, to a reasonable minimum salary, to protection to his health or person in his work or employment, and to an ordinary work-day which shall not exceed eight hours. An employee may work more than this daily limit only if he is paid extra compensation as provided by law, at a rate never less than one and one-half times the regular rate at which he is employed."

139.    When Plaintiffs worked more than eight hours on the first day of their workweeks, and more than eight hours each subsequent day, the entire subsequent day should have been paid at time and one-half.

140.    Defendant willfully failed to pay overtime pay to Plaintiffs.

141.

### COUNT VIII
### Violation of the Puerto Rico Constitution and Statute—
### Retaliation

142.    Plaintiffs, on behalf of themselves, individually, and all others similarly situated, reassert the allegations set forth in the above paragraphs.

143.    Count VIII arises from Defendants' violation of 29 L.P.R.A. § 194a, for retaliation after participating in an activity protected by law.

144.    Section 194a provides that no employer may discharge, threaten or discriminate against an employee should the employee offer or attempt to offer any testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico.

24

145.     Plaintiffs were terminated after demanding to see the FEMA contract and threatening to go the proper government authorities regarding Defendants' failure to pay wages under the FEMA contract.

146.     Plaintiffs are entitled to recover for any damages suffered, including mental anguish and reinstatement. Plaintiffs' are also entitled to double the amount of damages determined as having caused the violation of the provisions of Sections 194 et seq.

## COUNT IX
### Breach of Per Diem Agreement

147.     Plaintiffs, on behalf of themselves, individually, and all others similarly situated, reassert the allegations set forth in the above paragraphs.

148.     Defendants, and each of them, agreed to pay Plaintiffs a per diem housing and food allowance in consideration for agreeing to leave their homes in the United States and work for Defendants in Puerto Rico ("Per Diem Agreement").

149.     Plaintiffs performed their obligations under the Per Diem Agreement or were excused from doing so.

150.     Defendants breached the Per Diem Agreement by failing and refusing to pay Plaintiffs the per diem amount as agreed.

151.     As a direct and proximate result of Defendants' breach, Plaintiffs have suffered damages in amount to be proved at trial.

## COUNT X
### Breach of Equipment Rental Agreement

152.     Plaintiffs, on behalf of themselves, individually, and all others similarly situated, reassert the allegations set forth in the above paragraphs.

153.     In or about December 2017, Plaintiffs entered into Rental Agreements with J&W Grading on behalf of the other Defendants ("Rental Agreement").

25

154.     The Rental Agreement provides that Plaintiffs will lease Defendants their equipment on a month-to-month basis at a rate of $3,000 per month, in advance, beginning on December 1, 2017.

155.     The Rental Agreement further provides that Defendants will not, without Plaintiffs' prior written consent, alter, modify, or attach anything to the equipment unless it is easily removable without damaging the equipment.

156.     The Rental Agreement provides that the equipment remains the property of Plaintiffs.

157.     The Rental Agreement further provides that, on default under the Agreement, which includes failure to make monthly rental payments, Plaintiffs are entitled to take possession of the equipment without demand or notice.

158.     Plaintiffs have performed all obligations under the terms of the Rental Agreement, unless excused from doing so.

159.     Defendants have breached the terms of Rental Agreement by altering the equipment without permission and affixing signage to the equipment without permission, the removal of which will damage the equipment.

160.     Defendants further breached the terms of the Rental Agreement by failing to make monthly rental payments as required.

161.     Plaintiffs have sought to retake possession of the equipment as a result of Defendants' default under the Rental Agreement, but Defendants have failed and refused to allow Plaintiffs to take possession of the equipment. Defendants have therefore breached the terms of the Rental Agreement by refusing to allow Plaintiffs to take possession of the equipment under the terms of the Agreement.


**COUNT XI**
**Unjust Enrichment**


162.     Plaintiffs, on behalf of themselves, individually, and all others similarly situated, reassert the allegations set forth in the above paragraphs.

26

163.    Defendants, and each of them, have been, and continue to be, benefitted and enriched by the use of Plaintiffs' personal property.

164.    Plaintiffs have been, and continue to be, denied use and possession of their personal property, impoverishing and harming them.

165.    If Defendants assert the defense of privity of contract and deny the existence of a contractual relationship governing the rental of Plaintiffs' personal property, Plaintiffs will have no remedy at law for damages resulting from the wrongful retention of their equipment.

166.    Plaintiffs are entitled to recovery and/or restitution for the value of the benefit bestowed upon Defendants through the retention and use of their personal property.

## COUNT XII
### Conversion

167.    Plaintiffs, on behalf of themselves, individually, and all others similarly situated, reassert the allegations set forth in the above paragraphs.

168.    In refusing to return Plaintiffs' personal property, Defendants, and each of them, illegally exercised and assumed authority over Plaintiffs' property and have thereby engaged in a malicious and wrongful privation of Plaintiffs' ownership rights to said property.

169.    As the lawful owner of said property, Plaintiffs have been permanently or for an indefinite period, deprived of the use and enjoyment of said property.

170.    As a direct and proximate result of Defendants' wrongful conversion of Plaintiffs' property to their own use and benefit, Plaintiffs have suffered damages in an amount to be proven at trial.

## COUNT XIII
### Puerto Rico Civil Code Article 1802 Violation

171.    Plaintiffs, on behalf of themselves, individually, and all others similarly situated, reassert the allegations set forth in the above paragraphs.

172.    Defendants, and each of them, deliberately induced Plaintiffs to leave their homes and

their families and travel to Puerto Rico to work for Defendants in fulfilling the FEMA contract.

173.    Defendants, and each of them, promised to pay Plaintiffs wages and a per diem for the clean-up work performed under the FEMA contract.

174.    Defendants knew or should have known that these representations were false and made them with the intention that Plaintiffs act upon said representations.

175.    Plaintiffs reasonably and foreseeably relied on Defendants' representation as to the payment of wages and a per diem if they traveled to Puerto Rico to work on clean-up efforts under Defendants' FEMA contract.

176.    Defendants, and each of the, also deliberately induced Plaintiffs to lease their personal property, including vehicles, trailers and tools, allowing the equipment to be shipped to Puerto Rico for purported use in fulfilling the FEMA contract.

177.    Defendants, and each of them, promised to pay Plaintiffs for the lease of their personal property, to not damage or alter the property and to return the property to Plaintiffs.

178.    Defendants knew or should have known that these representations were false and that they did not intend to make lease payments to Plaintiffs for the use of their equipment, that they intended to alter Plaintiffs' property by adding signage to it, and that they did not intend to return Plaintiffs personal property.

179.    Defendants made these representations with the intention that Plaintiffs act upon such representations.

180.    Plaintiffs reasonably and foreseeable relied on Defendants' representations in allowing Defendants to transport their personal property to Puerto Rico and use it for the FEMA contract.

181.    As a direct and proximate result of Defendants misrepresentations, Plaintiffs have been damaged in amount to be proven at trial.

182.    Consequently, Defendants, and each of them, are responsible to Plaintiffs under Article 1802 and 1803 of the Puerto Rico Civil Code.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and all employees similarly situated who join this action demand and pray for:

a)      This Court to Order Defendants to file with this Court and furnish to counsel for Plaintiffs a list of all names, telephone numbers, home addresses, and email addresses of laborers who have worked for Defendants in Puerto Rico within the last three years;

b)      This Court to authorize Plaintiffs' counsel to issue notice at the earliest possible time to all laborers who have worked for Defendant in Puerto Rico within the last three years, informing them that this action has been filed, of the nature of the action, and of their right to opt in to this lawsuit if they were deprived of minimum wages and overtime compensation, as required by the FLSA;

c)      An Order under Section 16(b) of the FLSA finding Defendants liable for unpaid back wages due to Plaintiffs (and those who have joined in the suit) and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs (and those who have joined in the suit);

d)      An Order certifying this action as a class action under Puerto Rico Rules of Civil Procedure Rule 20, and designating the above Plaintiffs as representatives on behalf of all those similarly situated laborer employees;

e)      An Order under Puerto Rico state law finding Defendants liable for unpaid back wages and liquidated damages equal in amount to the unpaid compensation due to Plaintiffs and the class;

f)      An Order awarding general damages for breach of contract and conversion;

g)      An Order awarding loss of use damages for Plaintiffs' personal property converted by Defendants;

h)      An Order requiring Defendants to remove all decals, logos and other signage from Plaintiffs personal property and return said property to Plaintiffs;

i)      An Order awarding Plaintiffs the shipping costs of returning their personal property to the United States;

j)      An Order awarding the costs of this action;

k)      An Order awarding reasonable attorney fees;

l)      An Order awarding punitive damages on the fraud and conversion claims;

m)      A Declaration and finding by the Court that Defendants willfully violated provisions of the FLSA by failing to comply with the minimum wage and overtime requirements of the FLSA;

n)      An Order finding that Defendants retaliated against Plaintiff Michael Brown on the basis that he asserted violations of the FLSA;

k)      An Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law; and

o)      An Order granting such other and further relief as may be necessary and appropriate.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury for all issues of fact.

Respectfully submitted,

*/s/ Enrique J. Mendoza-Mendez*
Enrique J. Mendoza-Mendez
USDC Bar No. 202804
MENDOZA LAW OFFICES
P.O. Box 9282
San Juan, PR  00908
Tel: (787) 722-5522
Email: mendozalo@yahoo.com

*/s/ L. Michelle Gessner*
L. Michelle Gessner (Pro Hac Vice Pending)
THE LAW OFFICES OF MICHELLE GESSNER, PLLC
435 East Morehead Street
Charlotte, North Carolina 28202
Tel: (704) 234-7442
Email: michelle@mgessnerlaw.com

*Attorneys for Plaintiffs and Putative Class Members*