## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| Michael Brown, Jr., Nathan Cole, Aaron Floyd, Brandon Horton, Eric Moore, Gregory Seal, John Wilterding, Manny Rivera, Richard Padilla, Dan Vischansky, Neal Nida, Kevin Shofner, Shaun Stockton, Kyran Adams, Cody Piper, John Gable, Donna Turbville, individually, on behalf of themselves and all other similarly situated, | CIVIL NO.: 3:18-cv-01263 (WGY) |
| **PLAINTIFFS,** | |
| **VS.** | COLLECTIVE AND CLASS ACTION |
| J&W Grading, Inc., Migo IQ, Inc., Radar_Apps, Inc., ECO IQ LLC, Cloud IQ, LLC, Synergy LLC, Mojo Transport, LLC, Ronnie Guthrie, Jonathon Kotthoff, Carol Leese, Jason Neilitz; and DOES 1-100. | |
| **DEFENDANTS.** | |

## DEFENDANT ECO IQ LLC'S MOTION TO DISMISS
## THE AMENDED COMPLAINT

TO THE HONORABLE COURT:

**COMES NOW,** co-defendant, ECO IQ LLC, through the undersigned counsel, and before this Honorable Court very respectfully submit this Motion to Dismiss plaintiffs' Amended Complaint (Docket# 71-72) pursuant to Federal Rule of Civil Procedure 12(B)(6).

## PRELIMINARY STATEMENT

On September 10, 2018 the appearing Plaintiffs filed Amended Complaint (Docket # 96),  seeking  for themselves and for other similarly situated employees recovery of: (i) alleged unpaid minimum wages, (ii) alleged unpaid overtime salaries for work exceeding forty hours per workweek, and (iii) allegedly due statutory penalties provided by the Fair Labor Standards Act. 29 U.S.C. sec. 201 et seq.(from now on FLSA). In addition, plaintiffs seek the payment for the same or similar claims under Puerto Rico Wage Payment Statute and Minimum Wage Act cited in 29 LPRA sec. 171 et seq, sec. 250 et seq and sec. 271 et seq.

The allegations of the Plaintiffs are that they have been under the employment of, among others, co-defendant ECO IQ, claiming failure to compensate them the minimum salary establish by FLSA, and the payment of overtime work at a rate time and one half for work in excess of forty (40) hours a week.  Plaintiffs seek, under supplemental jurisdiction, the payment of unpaid salaries, overtime, and meal period provided under Puerto Rico Labor Legislation.  They are also seeking compensation for an alleged breach of contract claim and other compensatory damages for the tortious conduct allegedly displayed by the defendants.  Plaintiffs are seeking compensation from ECO IQ for these alleged events even when they are pleading in the Amended Complaint that they came to Puerto Rico to perform certain post hurricane cleanup work under the employment of co-defendant J&W Grading. Moreover, their claim for an alleged breach of contract is also directed towards co-defendant J&W Grading, the only party with whom they actually contracted. Dismissal is been requested because the Amended Complaint fail to articulate minimal factual allegations to establish, that

Plaintiffs  were actually under the employment of the ECO IQ, or that said co-defendant had an obligation, as their employer, or that ECO IQ was party to the contract in question.  Again, our position is that the Amended Complaint filed by the Plaintiffs, fails to meet the burden to establish a claim for which relief may be granted and that it should be dismissed.

## DISMISSAL UNDER RULE 12 (b) (6)

The Supreme Court of United States has recently clarified the requirements of an adequately stated federal claim; *Ashcroft v. Iqbal,* **556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), and** *Bell Atl. Corp. v. Twombly,* **550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)].**  Pursuant to these decisions the dismissal of a complaint for plaintiffs' failure to state a claim under which relief may be granted, pursuant to Rule 12 (b)(6) of FRCP, requires the  Court engages in a two-step analysis of the complaint. The reasoning of these cases was discussed by the US District Court for our district in the cases of *Ocasio-Hernández v. Fortuño-Burset,* **640 F.3d 1, 7, 11-13 (1st Cir.2011);** *Manning v Boston Medical Center Corporation*, **725 F.3rd 34 (1st Cir. 2013).**

In *Bell Atl. Corp. v. Twombly*, *supra the court stated that "the propriety of dismissal under Rule 12(b)(6) turns on the complaint's compliance with Rule 8(a)(2), which mandates that every complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2). Id. at 555, 127 S.Ct. 1955. It further explained that a "short and plain" statement does not need detailed factual allegations. Id. at 555, 127 S.Ct. 1955. That aspect of the Rule merely requires*

3

*sufficient detail in the complaint to give a defendant fair notice of the claim and the grounds upon which it rests. Id. (citing **Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).***

The **Twombly Court** reasoned, Rule 8(a)(2) also requires "that the plain statement possess enough heft to show that the pleader is entitled to relief." Id. at 557, 127 S.Ct. 1955 (emphasis added) (internal quotation marks omitted). It stated that a complaint only "shows" an entitlement to relief if its factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." See id. at 555, 127 S.Ct. 1955 (citation omitted). According to the Court, Rule 8(a)(2) must require more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."

According to **Ocasio-Hernández v. Fortuño-Burset**, supra, to provide guidance to lower courts on how best to apply the plausibility requirement of Rule 8(a)(2), the **Iqbal Court** endorsed a two-pronged approach that it saw as implicit in the **Twombly** decision. Under this approach, a court resolving a Rule 12(b) (6) motion to dismiss should begin by separating a complaint's factual allegations from its legal conclusions. Unlike factual allegations, legal conclusions contained within a complaint are not entitled to a presumption of truth

The second prong of the approach endorsed by the **Iqbal Court** requires a reviewing court to accept the remaining factual allegations in the complaint as true and to evaluate whether, taken as a whole, they state a facially plausible legal claim.

According to the Court, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." The **Iqbal Court** reiterated that a complaint may not stand simply on the "sheer possibility" that a defendant acted unlawfully or on facts that are merely consistent with a defendant's liability. It cautioned, however, that evaluating the plausibility of a legal claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. **Ocasio-Hernández v. Fortuño-Burset**, supra.

In performing the review, the court can realize what it can consider (a) "implications from documents" attached to or fairly "incorporated into the complaint," (b) "facts" susceptible to "judicial notice," and (c) "concessions" in plaintiff's "response to the motion to dismiss." *Arturet-Vélez v. R.J. Reynolds Tobacco Co.,* 429 F.3d 10, 13 n. 2 (1st Cir.2005); *see also Haley v. City of Boston,* 657 F.3d 39, 44, 46 (1st Cir.2011).

## ARGUMENTS TO COUNTS I, II, III, V and VI

On the above mentioned Counts plaintiffs claim they were employed by several codefendants and that they performed work for which they were denied the payment of salaries according to the minimum hourly salary mandated by the section 206 of FLSA and comparable sections, including meal and rest periods, of the Puerto Rico Wage Payment Statute, 29 L.P.R.A. §§ 171 et seq., §§ 250 et seq. and §§ 271 et seq.  They claim they were paid less than minimum for each hour of hourly work performed for their employer.  In addition, they seek the payment of alleged overtime work at a rate of no less than time and one half, for the work in excess of 40 hours as provided by section

207 of FLSA and the comparable sections, including meal and rest periods, of the Puerto Rico Wage Payment Statute, 29 L.P.R.A. §§ 171 et seq., §§ 250 et seq. and §§ 271 et seq.

The Plaintiff's Complaint is brought as a class action to recover unpaid wages, unpaid overtime compensation, liquidated damages, statutory penalties, and damages owed to Plaintiffs and all other similarly situated laborers employed by, or formerly employed by Defendants, subsidiaries, and affiliated companies under the laws of Puerto Rico. The allegations are that for at least three years before the filing of this action, Defendants have been withholding wages from laborers and a consistent policy and practice of (i) requiring laborers more than 40 hours per week without paying them regular wages or proper overtime compensation as required by federal and state wage laws, and (ii) denying meal and rest periods as required by federal and state laws.

For purposes of this Motion to Dismiss, and limited to that, co-defendant ECO IQ accepts all well-pleaded factual allegations of the Amended Complaint, as required for this type of analysis.


## FLSA  ALLEGATIONS

To assess the sufficiency of the complaint's allegations we must apply the two steps test of ***Ashcroft v. Iqbal,* supra**.  Base on that test all conclusory allegations that only repeat the relevant legal standards are disregarded, as they are not entitled to the presumption of truth.   Second, the factual allegations are accepted as true and decide

if, drawing all reasonable inferences in plaintiffs' favor, they are sufficient to show an entitlement to relief. The allegations must be enough to render the claim plausible.

In order to establish a viable FLSA claim, each plaintiff is required to demonstrate that: (1) he was employed by the defendant(s); (2) the work involved interstate activity; and (3) he "performed work for which [he/she] was under-compensated." **Pruell v. Caritas Christi, 678 F.3d 10, 11 (1st Cir.2012); Mercado-Rodríguez v. Hernández Rosario, 150 F. Supp. 3d 171 (DC PR. 2016).**

If the Plaintiffs fail to meet this FLSA criterion, and are left with no recourse under FLSA, the Court would lack subject matter jurisdiction over the case. Since the remaining claims are based upon supplemental jurisdiction principles tied up to the FLSA claim, the Court would have to dismiss the case against co-defendant ECO IQ in its entirety, for lack of federal jurisdiction.[1]

ECO IQ main argument for the dismissal of this Amended Complaint is that it never entered into employee-employer relation with any of the Plaintiffs.  Since the Plaintiffs were not employees of ECO IQ it does not matter if the work allegedly performed by the Plaintiffs involved interstate activity or if they were under compensated.  ECO IQ is not responsible for its payment.   Whatever work they did it was not done as employees of ECO IQ.

---

[1] *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)). "[S]ubject-matter jurisdiction cannot be created by waiver or consent." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001). A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject matter jurisdiction over a case. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) (A federal court may raise subject matter jurisdiction *sua sponte.*").

According to the Amended Complaint the Plaintiffs were initially contracted under "Subcontractor Agreements" by codefendant J&W Grading, not by ECO IQ. The Agreements provided the terms and conditions pursuant to which plaintiffs would provide services, including details of the scope of the work, the amount of the compensation for each project and other compensations that would be provided or paid. J&W Grading was in control of all these matters. Plaintiffs describe this relationship as one of a principal and a contractor, proper of an independent contractor. (See, paragraphs 61, 62, 63 and 64 of the Amended Complaint).

According to the Amended Complaint when the plaintiffs arrived in Puerto Rico they were informed they would be retained as employees of J&W Grading and were required to execute a "New Hire Package". (See, paragraph 76 of the Amended Complaint [Docket # 71-72]).  This "New Hire Package" included all the necessary documents an employer, in the present case J&W Grading, was required to secure. The "Subcontractor Agreement" originally proposed to the Plaintiffs was never implemented.

ECO IQ was not part of this new "hire package", and nor it nor anyone on its behalf was even mentioned in the document.  As part of the "New Hire Package", plaintiffs were required to sing a "Non-disclosure and Non-Circumvent Agreement", specifically with co-defendants Migo, Inc., Mojo Transport LLC and Cloud IQ. (See, paragraph 77 of the Amended Complaint and Exhibit D of Amended Complaint [Docket # 71 and 72-4, at pp. 14-16]). Co-defendant ECO IQ was never part of, nor a signatory to, the referred "Non-disclosure and Non-Circumvent Agreement". (See, Exhibit D of the Amended Complaint).

As to the first requirement for a valid claim under FLSA, that is, that plaintiffs were employed by defendant(s), plaintiffs fail to make such claim as to co-defendant ECO IQ.  However, in an attempt to meet this criteria, plaintiffs allege in the Amended Complaint (in a general, conclusory and non-specific way), that defendants have been acting and conducting themselves as joint-employers, and as such, all are responsible to them for the failure to pay the minimum salary established by FLSA, as well as for the payment of overtime work and other claims made under Puerto Rico Labor Law.  These allegations are speculative and incompatible with the notice pleading structure of the Federal Rules. They fail to specify which specific conducts can led any one to belief that all defendants, or some of them, were acting and conducting themselves as joint-employers of the plaintiffs.

Under FLSA the definition of  employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but not include a labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization." 29 U.S.C. section 203 (d).  The determination of whether an employer-employee relationship exists does not depend on "isolated factors but rather upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947).  To determine the existence of an employer-employee relationship, the courts have developed a list of factors to assist in the clarification of the particular employment relationship and to find out which employees are dependent on which putative employers.

In *Baystate Alternative Staffing, Inc. v Herman*, 163 F.3d 668 (1st Cir. 1998), the court established four factors test to consider in determining which employer or which of the putative employers may be liable under FLSA's definition of employer. These factors are whether the alleged employer (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. See also, *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465, 1470, (9th Cir. 1983).

The Amended Complaint fails to assert factual allegations or even to suggest that co-defendant ECO IQ was acting as a joint employer of the plaintiffs.

Direct allegations against ECO IQ on the issue of whether it is a joint employer are only included on very few of the paragraphs of the Amended Complaint.  On paragraph 36 the Amended Complaint states that upon information and belief Co defendant Ivelisse Estrada Rivero is the owner of Synergy and ECO IQ.  On paragraph 37 it states that  codefendants Kotthoff, Leese, and Neilitz are involved in the day-to-day business operations of Defendants Migo IQ, Inc., Cloud IQ, Inc., RADAR_Apps, Inc., ECO IQ, LLC, ECO IQ, Inc., and Mojo Transport, LLC, and have authority to hire and fire employees, the authority to direct and supervise the work of employees, including Plaintiffs in this case, and the authority to make decisions regarding wage and hour classifications, including the decisions as to employee compensation and capital expenditures.

These two unsubstantiated allegations are then use to conclude that "At all relevant times, Defendants Kotthoff, Leese, Estrada Rivero and Neilitz have been and

are "employers" as defined by the FLSA, 29 U.S.C § 203(d), and Puerto Rico Code 29 L.P.R.A. § 271 et seq." According to this statement ECO IQ is not an "employer" in this case as defined by the FLSA, 29 U.S.C § 203(d), and Puerto Rico Code 29 L.P.R.A. § 271 et seq

All the allegations included in the above mentioned paragraphs lack plausibility as to ECO IQ. They fail to plead factual content that could allow a court to draw the reasonable inference that ECO IQ had authority to hire and fire any of the Plaintiffs, or the authority to direct and supervise them, or the authority to make decisions regarding wage and hour classifications, including the decisions as to employee compensation and capital expenditures.

On the same issue of the "joint employer" paragraphs 40 to 43 of the Amended Complaint the Plaintiffs raised a series of conclusory allegations against all defendants that only repeat the relevant legal standards and should be disregarded, as they are not entitled to the presumption of truth.[2]

---

[2] 40. Plaintiffs are further informed and believe that at all relevant times all Defendants, and each of them, were and are the agents, servants, employees, joint venturers, alter egos, and/or partners of each of the other Defendants, and were, at all such times, acting within the course and scope of their employment and/or agency; and that each and every Defendant, while acting as a high corporate officer, director, and/or managing agent, principal and/or employer, expressly directed, consented to, approved, affirmed, and ratified each and every action taken by the other co-Defendants, as herein alleged, and was responsible in whole or in part for the matters referred to herein.

41. Plaintiffs are further informed and believe that at all relevant times Defendants, and each of them, proximately caused Plaintiffs, and all others similarly situated and the general public, to be subjected to the unlawful practices, wrongs, complaints, injuries, and/or damages alleged in this Complaint.

An examination of the above stated paragraphs shows that all of them are predicated upon plaintiffs' "information and belief" of something that leads them to conclude that co-defendant ECO IQ was their employer. Plaintiffs have failed to state what are the facts or evidence that leads them to such a conclusion.  In these paragraphs the Amended Complaint fails to provide any factual allegation to provide such answers, to establish *prima facie* that co-defendant ECO IQ employed the Plaintiffs or that it had the power to hire or fire them or the supervisory authority over plaintiffs' work schedules or conditions of employment.

On paragraphs 120 to 146 the Amended Complaint the Plaintiffs include additional allegations trying to demonstrate that ECO IQ together with Synergy, Cloud IQ, Migo IQ, Radar_Apps and Mojo Transport were working as joint employers of the Plaintiffs. If we applied the text of **Ashcroft v. Iqbal, supra** to these factual allegations we have to conclude again that co-defendant ECO IQ cannot be to characterize as an "employer" of the plaintiffs.

In particular, in paragraphs 123 to 127 they refer to a report dated December 29, 2017 regarding a release were Defendant Synergy, LLC is specifically identified as the entity who was awarded a contract with the mayor of Ponce to collect debris from

---

42. Plaintiffs are further informed and believe that Defendants, and each of them, are now and/or at all relevant times were members of and/or engaged in a joint venture, partnership, and common enterprise, and were acting within the course and scope of, and in pursuit of that joint venture, partnership, and common enterprise and, as such, were co-employers of Plaintiffs and the putative class herein.

43. Plaintiffs are further informed and believe that Defendants, and each of them, at all relevant times concurred with, contributed to, approved of, aided and abetted, condoned, and/or otherwise ratified the various acts and omissions of each and every one of the other Defendants in proximately causing the injuries and/or damages alleged in this Complaint.

Hurricane Maria. The article states that Synergy was hired to collect 200,000 cubic yards of vegetative material and debris in Ponce.  No mention is made here that connect ECO IQ to this contract.

On Paragraphs 128 to 135 Plaintiffs elaborate a theory of why they were not paid due to the way in which the cleanup contract worked. On these paragraphs the Plaintiffs identifies Synergy and ECO IQ as the companies that contracted directly with FEMA and the corps of Engineers for the cleanup job.  However, when referring to the parties that received the benefit of the contract they refer to Synergy, J&W Grading and Cloud IQ.  No mention is made of ECO IQ.  If ECO IQ received no benefit from this contract is because it was not part of it.  This allegation, even if assumed to be correct just for the discussion of this motion, and limited to that, does not support the allegation that ECO IQ was in control of the rates that were paid to the plaintiffs.

On paragraphs 136 to 139 of the Amended Complaint the Plaintiffs try to demonstrate that all the Defendants were directing and in control of work schedule and conditions of employment of the cleanup project.  However, again they allege one thing and conclude something that is not related to the allegation. The allegation is that Synergy received the money of the contract and Migo IQ received the job orders from the municipalities. Migo gave those orders to Cloud IQ and Cloud IQ acted as the foreman, telling Plaintiffs where to go and what to do each day.[3]  This allegation, even if

---

[3] Migo IQ issued each Plaintiff an Iphone 8 with its App pre-loaded. Plaintiffs were required to clock in and out on the App and all aspects of their work was monitored and controlled by the Technology Firm Defendants. Migo IQ, Cloud IQ and Synergy all watched the App in action and monitored Plaintiffs work remotely from a room back at the main office, called the "bird house." Plaintiffs were informed that all

assumed to be correct just for the discussion of this motion, and limited to that, does not support the allegation that ECO IQ had anything to do with the Plaintiffs' conditions of employment.

On paragraphs 140 to 144 of the Amended Complaint the Plaintiffs allege that all the defendants had the power to hire and fire the Plaintiffs. The conclusions included on these paragraphs are based on vague statements allegedly made by unidentified persons that allegedly represent certain codefendants. The specific wording of the message is not given nor the names of any Plaintiff that might has heard it.  Due to its lack of specificity this allegation does not support the allegation that the defendants had the power to hire and fire the Plaintiffs.

On this paragraphs (140 to 144) it is also allege that after J&W Grading was no longer on the clean-up project, Synergy/ECO IQ, Migo IQ, Mojo Transport and Cloud IQ continued to use Plaintiffs' vehicles and equipment which remained wrapped in advertising depicting the names of Synergy, Mojo IQ and Eco IQ.  Even if we assumed this allegation to be correct just for the discussion of this motion, and limited to that, it does not support the alleged conclusion that any particular defendant and particularly ECO IQ had the power to hire or fire the plaintiffs. These allegations lack plausibility as to ECO IQ. They fail to plead factual content that could allow a court to draw the reasonable inference that ECO IQ had that power.

On paragraphs 145 to 146 of the Amended Complaint it is alleged after Plaintiffs' vehicles and equipment arrived in Puerto Rico, defendants Synergy, Cloud IQ, Migo IQ

---

their work had to be monitored by the App and that any worker who self-monitored would be sent home.

and/or ECO IQ, wrapped Plaintiffs' vehicles and equipment in advertising signage which states: "EQO IQ, powered by MIGO, IQ, partnered with Synergy." This allegation is raised to support the conclusion that all the defendants were all joint employers of the Plaintiffs.  Even if assumed this allegation to be correct just for the discussion of this motion, and only to that effect, it does not support the allegation that all defendants were all joint employers of the Plaintiffs.  These allegations lack plausibility as to ECO IQ. They fail to plead factual content that could allow a court to draw the reasonable inference that ECO IQ had was a Joint employer of the plaintiffs together with the other Defendants..

These conclusions made by the Plaintiffs regarding the theory of the joint employer are not supported by any of the documents included as exhibits of the Amended Complaint.  Even if we assume them to be correct just for the discussion of this motion to dismiss, and limited to that, they do not support Plaintiffs' allegations that ECO IQ  hired the Plaintiffs for the cleanup job refer to in the Amended Complaint or was in any way involved in the day-to-day business operations that perform said work and have authority to hire and fire employees, the authority to direct and supervise the work of employees, including Plaintiffs in this case, and the authority to make decisions regarding wage and hour classifications, including the decisions as to employee compensation and capital expenditures.

The only factual conclusion one can make from the plaintiffs' Amended Complaint and its supporting documents, is that plaintiffs were hired by co-defendant J&W Grading, who allegedly brought them to Puerto Rico and with whom they entered into Subcontractor Agreements that were subsequently modified and/or upgraded to an

Employment Agreements.  They were allegedly hired by J&W Grading and their agents and employees, who according to the Amended Complaint directed their work, paid their salaries, supervised their work and kept employment records.  There is no specific allegation in the Amended Complaint that directly connects ECO IQ to the Plaintiffs. The plaintiffs, without any underlying facts and with limited conclusory allegations, seek to improperly include co-defendant ECO IQ as one of the other allegedly liable defendants in this case.

A complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements…" and, as such, must be ignored by the Court.  A complaint does not need detailed factual allegations, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678-79, 129 S. Ct. 1937.

There is no specific statement from any of the Plaintiffs that they ever worked with or received instructions or orders from any person who identified himself as an agent or employee of ECO IQ.  To survive dismissal Plaintiffs' Complaint must provide some source of connection between ECO IQ and the Plaintiffs.  It is very improbable that after two months of work in Puerto Rico none of the Plaintiffs can mention even one name of anyone connected to ECO IQ with whom they interacted during the time they were working in the island.

This factor together with the fact that all the exhibits included in the Amended Complaint [4]  evidences that it was co-defendant J&W Grading who entered into a direct

---

[4] In performing the review, the court can realize what it can consider (a) "implications from documents" attached to or fairly "incorporated into the complaint," (b) "facts" susceptible to "judicial notice," and (c) "concessions" in

employee- employer relation with any of the Plaintiffs is sufficient justification to grant the dismissal of this complaint in favor of ECO IQ. Take for example Exhibit Exhibit D, the Non-disclosure and Non-Circumvent Agreement. (See, Docket # 72-4, at pp 14-16). ECO IQ is not a party to this agreement.  What these documents reflect is that co-defendant J&W Grading, is the responsible party to the individual plaintiffs.

As to the third element, that a plaintiff must allege in their FLSA claim that it has "perform[ed] work for which (he) was under-compensated", *Pruell v. Caritas Christi, supra.*, plaintiffs have failed to allege in the Amended Complaint sufficient facts to make such a viable claim against to ECO IQ.  ECO IQ was not an employer to the Plaintiffs as this term is defined by the FLSA, 29 U.S.C § 203(d), and Puerto Rico Code 29 L.P.R.A. § 271 et seq. therefore, it had no obligation with them for the payment of salary or compensation of any kind.

Plaintiffs have failed to allege sufficient factual allegations to show that co-defendant ECO IQ was acting or conducting itself as an independent or joint employer, since there is no factual allegation to sustain that it had the power to hire or fire, to supervise with authority plaintiffs, to schedule or set terms and conditions of employment for plaintiffs; to determine the rate of pay; or that it maintained their employment records. *Baystate Alternative Staffing, Inc. v Herman, supra.*

The allegations of facts contained in the Amended Complaint show that their employer was J&W Grading, and not co-defendant ECO IQ.  To avoid dismissal, plaintiffs' Amended Complaint must contain specific allegations against <u>each co-defendant</u>. As the First Circuit noted when deciding a motion to dismiss, "we must

---

plaintiff's "response to the motion to dismiss." *Arturet-Vélez v. R.J. Reynolds Tobacco Co.,* 429 F.3d 10, 13 n. 2 (1st Cir.2005); *see also Haley v. City of Boston,* 657 F.3d 39, 44, 46 (1st Cir.2011).

determine whether, *as to each defendant*, a plaintiff's pleadings are sufficient to state a claim on which relief can be granted." *See Ocasio–Hernández v. Fortuño–Burset*, supra.

Co-defendant ECO IQ believes that the Amended Complaint, as recently filed, fails to state a valid claim against ECO IQ under FLSA; it is based on conclusory allegations, and the allegations mentioning this co-defendant do not make for a plausible claim of the type(s) alleged by the plaintiffs. Moreover, such failure to assert a plausible FLSA claim deprives this Court of federal subject matter jurisdiction[5], defeating also any related claims based on supplemental jurisdiction under potentially applicable state laws.

## COUNT IV:  PRIVATE ACTION FOR VIOLATIONS OF THE TIME INTERVALS FOR PAYMENT OF SALARIES

On Count IV of the Amended Complaint Plaintiffs allege that defendants failed to compensate them within the time intervals required by Section 3 of Puerto Rico Law 17-1931, 29 L.P.R.A. §173. This section requires employers to pay their employees for all hours worked at intervals not exceeding fifteen (15) days. Count IV demands payment of wages plus an additional equivalent amount for liquidated damages. It premises its demand on Section 8 of that statute.

ECO IQ main argument for the dismissal of this Count as well as the whole Amended Complaint is that it fails to include specific allegations to demonstrate that ECO IQ had an employee-employer relation with any of the Plaintiffs.  Since the Plaintiffs were not employees of ECO IQ it does not matter if they were compensated

---

[5] Rule 12(b)(1) of FRCP.

within the time intervals required by Section 3 of Puerto Rico Law 17-1931, 29 L.P.R.A. ECO IQ is not responsible for its payment. Whatever work they did in order to be compensate within the time intervals required by Section 3 of Puerto Rico Law 17-1931, 29 L.P.R.A. §173 was not done as employees of ECO IQ.

Plaintiffs have also failed to allege sufficient factual allegations to show that co-defendant ECO IQ was acting or conducting itself as an independent or joint employer, since there is no factual allegation to sustain that it had the power to hire or fire, to supervise with authority plaintiffs, to schedule or set terms and conditions of employment for plaintiffs; to determine the rate of pay; or that it maintained their employment records. *Baystate Alternative Staffing, Inc. v Herman, supra.*

The allegations of facts contained in the Amended Complaint show that their employer was J&W Grading, and not co-defendant ECO IQ.  To avoid dismissal, plaintiffs' Amended Complaint must contain specific allegations against <u>each co-defendant</u>. As the First Circuit noted when deciding a motion to dismiss, "we must determine whether, *as to each defendant*, a plaintiff's pleadings are sufficient to state a claim on which relief can be granted." *See Ocasio–Hernández v. Fortuño–Burset*, supra.

Another motive for the dismissal of this Count is that the law cited to justify the compensation does not authorize a private cause of action for violation of Section 3. This provision is enforced only via criminal proceedings and the Plaintiffs have failed to cite any legal support for their contention that a civil remedy exists under this provision. The Plaintiffs lack a private cause of action under 29 L.P.R.A. §173, therefore Count IV must be dismissed.

**COUNT VII:   DAMAGES FOR RETALIATION UNDER 29 LPRA 194 (a)**

On Count VII of the Amended Complaint Plaintiffs allege that defendants violated of 29 L.P.R.A. § 194a, for retaliating against the defendants for participating in an activity protected by law.   According to Section 194a no employer may discharge, threaten or discriminate against an employee should the employee offer or attempt to offer any testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico.

 Plaintiffs allege they were terminated after demanding to see the FEMA contract and threatening to go to the proper government authorities regarding Defendants' failure to pay wages under the FEMA contract, therefore they are allegedly entitle are entitled to recover for any damages suffered.

In this Count Plaintiffs have failed to allege sufficient factual allegations to show that co-defendant ECO IQ is liable to them under 29 L.P.R.A. § 194a, for retaliating against the defendants for participating in an activity protected by law

Plaintiffs have also failed to allege sufficient factual allegations to show that co-defendant ECO IQ was acting or conducting itself as an independent or joint employer, since there is no factual allegation to sustain that it had the power to hire or fire, to supervise with authority plaintiffs, to schedule or set terms and conditions of employment for plaintiffs; to determine the rate of pay; or that it maintained their employment records. *Baystate Alternative Staffing, Inc. v Herman, supra.*

The allegations of facts contained in the Amended Complaint show that their employer was J&W Grading, and not co-defendant ECO IQ.  To avoid dismissal, plaintiffs' Amended Complaint must contain specific allegations against <u>each co-defendant</u>. As the First Circuit noted when deciding a motion to dismiss, "we must determine whether, *as to each defendant*, a plaintiff's pleadings are sufficient to state a claim on which relief can be granted." *See Ocasio–Hernández v. Fortuño–Burset*, supra.

No specific allegations are made to demonstrate the ECO IQ was acting or conducting itself as an independent or joint employer of the Plaintiffs or that it terminated any Plaintiffs after they allegedly demanded to see the FEMA contract and threatened to go to the proper government authorities regarding Defendants' alleged failure to pay wages under the FEMA contract therefore, Count VII must be dismissed in favor of ECO IQ.


**COUNT VIII:  BREACH OF PER DIEM AGREEMENT**

Under Count VIII Plaintiffs argues that all Defendants are liable to them under the Subcontractor Agreement, which calls for a provision of "Sustainment Per Diem Per Labor Man-Day of $100".  According to the Amended Complaint Defendants agreed to pay Plaintiffs a per diem housing and food allowance in consideration for agreeing to leave their homes in the United States and work for Defendants in Puerto Rico ("Per Diem Agreement").   This agreement is included in the Subcontractor Agreement that Plaintiffs attached as Exhibit A to the Third Amendment Complaint.   According to Plaintiffs, Defendants breached this Per Diem Agreement by failing or refusing to pay

Plaintiffs the per diem amount as agreed.  Count VIII claims damages for this alleged breach.

The Subcontractor Agreement that is attachment to the Amended Complaint is not signed by any party and according to its wording it was made to be executed between J&W Grading and all Plaintiffs individually.  No evidence is included to demonstrate that copies of it were signed by any of the defendants therefore, Plaintiffs have failed to show that any of the Defendants was a party to the unsigned Subcontractor Agreement. ECO IQ in particular cannot be held liable on an agreement to which it was not a part.

In this Count Plaintiffs have failed to allege sufficient factual allegations to show that co-defendant ECO IQ is liable to them under the Subcontractor Agreement. In the Amended Complaint there are no factual allegations to sustain that *ECO IQ* agreed to pay Plaintiffs a per diem housing and food allowance in consideration for agreeing to leave their homes in the United States and work for Defendants in Puerto Rico ("Per Diem Agreement").

The facts contained in the Amended Complaint show that the Subcontractor Agreement was negotiated with J&W Grading and not co-defendant ECO IQ.  To avoid dismissal, plaintiffs' Amended Complaint must contain specific allegations against each co-defendant.  No specific allegations are made to demonstrate the ECO IQ was part of the Subcontractor Agreement or the J&W Grading was acting on behalf of ECO IQ. therefore, Count VIII must be dismissed in favor of ECO IQ.

**COUNT XII:  CLAIM OF CONVERSION**

On Count XII, Plaintiffs claim that, that after J&W Grading defaulted on the Rental Agreement, it continued to maintain possession and control, and/or allowed the Defendants to retain possession and control of Plaintiffs' equipment, to the exclusion of Plaintiffs, and despite requests for its return. The allegation is that by refusing to return their personal property, Defendants maliciously and wrongfully deprived them of ownership, use and enjoyment rights over said property. The Plaintiffs are claiming damages under a cause of action known know under common law as conversion.

Under Puerto Rico's Civil Code conversion is not an actionable cause of action. It could be raised in the Complaint but as a general tort under Article 1802 of our Civil Code, or as claim for unjust enrichment. However, plaintiffs have already raised both causes of action in Counts X, XI and XIII, therefore Count XII would be a duplication of the same cause of action therefore, it should be dismissed.

In this Count Plaintiffs have also failed to allege sufficient factual allegations to show that co-defendant ECO IQ is liable to them because it refused to return their personal property, or because it maliciously and wrongfully deprived them of ownership, use and enjoyment rights over said property.

The facts contained in Count XII of the Amended Complaint show that the Subcontractor Agreement was negotiated with J&W Grading and not co-defendant ECO IQ.  To avoid dismissal, plaintiffs' Amended Complaint must contain specific allegations against <u>each co-defendant</u>. As the First Circuit noted when deciding a motion to dismiss, "we must determine whether, *as to each defendant*, a plaintiff's pleadings are sufficient to state a claim on which relief can be granted." *See Ocasio–Hernández v.*

*Fortuño–Burset*, supra.

Co-defendant ECO IQ believes that Count XII of the Amended Complaint fails to state a valid claim showing that ECO IQ is liable to the Plaintiffs under the Subcontractor Agreement; it is based on conclusory allegations, and the allegations mentioning ECO IQ do not make for a plausible claim of the type(s) alleged by the Plaintiffs.  This Count should also be dismissed as to ECO IQ.


**COUNT X, XI and XIII: ARTICLE 1802 (TORT) CLAIMS**

On these Counts, Plaintiffs seek remedies pursuant to their alleged employment, Subcontractor Agreements and Equipment Rental Agreements with J&W Grading. Under all these Counts Plaintiffs seek to hold J&W liable responsible for damages under Article 1802 of the Puerto Rico Civil Code. On Count X they are claiming unjust enrichment.   Under Count XI alleging that all defendants deliberately induced Plaintiffs to travel to Puerto Rico to work for them and that they promised to pay Plaintiffs for their work and for the lease of their property.   Under Count XIII it is alleged that J&W breached its duty to use reasonable care in connection with the equipment it leased from Plaintiffs, and that this breach resulted in damages caused to the Plaintiffs.

Count XIII, in as much as it direct its allegation exclusively as to the conduct of J&W Grading must be dismiss as to ECO IQ.

 Count X and XI should also be dismissed as to ECO IQ. In these Counts Plaintiffs have  failed to include sufficient factual allegations to show that co-defendant ECO IQ is liable to them for unjust enrichment or because defendants deliberately

induced Plaintiffs to travel to Puerto Rico to work for them and that they promised to pay Plaintiffs for their work and for the lease of their property.

The facts contained in the Amended Complaint show that their Subcontractor Agreement was negotiated with J&W Grading and not co-defendant ECO IQ.  To avoid dismissal, plaintiffs' Amended Complaint must contain specific allegations against <u>each co-defendant, including ECO IQ</u>. Counts X and XI fail to include specific facts to show that ECO IQ is liable to the Plaintiffs.

Co-defendant ECO IQ believes that the Amended Complaint, fails to state a valid claim showing that ECO IQ is liable to the Plaintiffs under the allegations of Count X and XI because it is based on conclusory allegations, and the allegations mentioning this co-defendant do not make for a plausible claim of the type(s) alleged by the Plaintiffs.

**CONCLUSION:**

In conclusion, it is co-defendant ECO IQ's position that the Amended Complaint fails to meet the burden of **Rule 12(b)(6) of FRCP** to establish a claim for which relief may be granted. The Complaint is pleaded with generalized allegations against all defendants that are insufficient to state a claim.  It furnishes no specific details as to which of the co defendants engaged in any of the violations of law alleged in the Amended Complaint, or when and where they took place. . . . [A] defendant seeking to respond to plaintiffs' conclusory allegations in the § 1 context would have little idea where to begin." **Twombly, 550 U.S. at 564 n. 10, 127 S.Ct. 1955.**

**WHEREFORE**, co-defendant ECO IQ respectfully requests that this Honorable Court grant this Motion to Dismiss and dismiss the captioned case in its entirety as to

this co-defendant, with prejudice, granting costs and attorney's fees, and such other relief the Court deems just and proper.

**RESPECTFULLY SUBMITTED**

**WE HEREBY CERTIFY** that on this same date copy of this document has been served via the CM/ECF system upon counsel of record in this matter.

In San Juan, Puerto Rico, this 5th day of November, 2018.

**s/ CARLOS R. SOSA PADRO, ESQ.**
USDC-PR  205112
**CARLOS R. SOSA PADRO LAW OFFICE**
PO Box 191682
San Juan, PR  00919-1682
Tel.  250-0081, Tel/Fax 250-0078
E-Mail:  csosalaw@gmail.com